IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JESSE PEREZ, )
        Plaintiff, )
)
vs. ) Case No.   15-cv-42-MJR-SCW
)
ROBERT SHEARING, FRANK )
EOVALDI, AIMEE LANG, CHARLES )
SWISHER, DAVID EALEY, and JOHN )
DOES #1-4, )
)
        Defendants.

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

Pursuant to **42 U.S.C. § 1983**, *pro se* Plaintiff Jesse Perez, filed this complaint against various individuals for numerous constitutional violations stemming from an incident that occurred on March 16, 2013 while Plaintiff was housed at Menard Correctional Center.  Plaintiff's complaint alleges that Defendants Evoldi, Ealey, Swisher, and John Does #1-4 used excessive force against him on March 16, 2013 (Count 1) and that they along with Lang and Shearing were deliberately indifferent to the injuries he sustained in that attack (Count 3).  Plaintiff also alleges that all of the Defendants retaliated against him (Count 6) and were in a civil conspiracy against

Plaintiff (Count 7). Finally, Plaintiff alleges that Defendants' assault amounted to an assault and battery under Illinois law (Count 8). This matter is before the Court on Defendant Shearing motion for summary judgment (Docs. 53 and 54) and a motion for summary judgment (Docs. 58 and 59) filed by Defendants Frank Eovaldi, Aimee Lang, Charles Swisher, and David Ealey. The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT** Defendants' motion for summary judgment (Docs. 64 and 65).

FINDINGS OF FACT

A. **Factual Background**

Plaintiff filed a complaint on January 15, 2015 alleging various constitutional violations stemming from an alleged assault by officers which took place on March 16, 2013 (Doc. 1). As narrowed by the threshold order, Plaintiff alleges that on March 16, 2013 Defendants Eovaldi, Ealey, Swisher, and four unknown John Does informed Plaintiff that he was going to segregation (Doc. 6, p. 3). Plaintiff was then handcuffed behind his back and taken from his cell (*Id.*). However, instead of going to segregation, he was taken to a shower and John Doe's 1 and 2 forced Plaintiff to face the wall while the others slapped, punched, and elbowed Plaintiff in the head and back, hit his thighs and groin, and called him names (*Id.*). After the attack, Plaintiff asked for medical

attention but was refused.

Plaintiff was then taken by these same officers to a caged visitation area. There, he was assaulted a second time (Doc. 6, p. 3). Defendants punched him in his hip, side, and back while he remained handcuffed (*Id.*). Plaintiff was warned if he told anyone about the assault he would be beaten again (*Id.*). He was then stripped and given a segregation jumpsuit (*Id.*). He again asked for medical care which was denied (*Id.*).

Plaintiff filed a grievance on March 18, 2013 regarding the assault and denial of medical care (Doc. 6, p. 3). The next day he was brought before the adjustment committee and found guilty on disciplinary charges (*Id.* a tp. 3-4). Plaintiff finally saw nurse Lang on March 20, 2013 and then Dr. Shearing on March 23, 2013 but after they learned that he received his injuries from the officer assault, they refused to treat him (*Id.* at p. 4).

In response to the complaint, both Defendant Shearing (Docs. 53 and 54) and Defendants Eovaldi, Lang, Swisher, and Ealey (Docs. 58 and 59) filed motions for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies. As to Defendant Shearing, Plaintiff alleged in his complaint that he submitted a grievance on March 18, 2013 about his assault and denial of care, but the grievance does not appear in his complaint (Doc. 1, p. 4). He also filed a grievance on March 29, 2013 alleging that he was denied medical care (Doc. 54-1). This grievance indicates that he requested care from the assault and when he saw the doctor, the doctor would not listen to his complaints of pain in his leg and headaches (*Id.*). The grievance also indicates

that he saw a nurse on March 20, 2013 for psoriasis and he tried to tell her about the injuries he sustained in an attack on March 16, 2013 but the nurse told him the injuries were not her concern as she was only there to see him about his psoriasis (*Id.*). This grievance was reviewed by Plaintiff's counselor on April 2, 2013 and signed by the counselor sometime on May 13, 2013 (*Id.* at p. 1). This grievance was received by the grievance officer on June 11, 2013 and was denied on July 29, 2013 (Doc. 54-2). The chief administrative officer received the grievance on August 6, 2013 and denied the grievance on August 8, 2013 (*Id.*). There is no indication on the grievance that it was appealed to the ARB (*Id.*; Doc. 54-4). The other Defendants similarly point out that none of the grievances appealed to the ARB deal with the March 2013 assault (Doc. 59-1, p. 3-4, 59-2).

Plaintiff filed a response is opposition to Defendants' motions (Doc. 67). Plaintiff alleges that he filed the grievances that were attached to his complaint. Plaintiff's complaint includes copies of his March 29, 2013 grievance which indicates that he appealed the grievance to the ARB on August 27, 2013 (Doc. 1, p. 11; Doc. 67, p. 12). His complaint also includes a grievance dated April 16, 2013 which requests that two disciplinary tickets be expunged because he was not served the reports and did not learn of the charges until the hearing itself (Doc. 1, p. 18).[1] The grievance office received that grievance on April 19, 2013 (*Id.*).

---

[1] This grievance only alleges that he was not served the disciplinary report prior to the hearing and was not prepared to defend himself at the hearing. The grievance does not include any allegations about the assault or his medical care and, thus, are not relevant for purposes of exhaustion in this case.

### B. Pavey Hearing

As the undersigned found there to be a dispute of fact over whether Plaintiff properly exhausted his administrative remedies, the Court held a hearing on January 26, 2016 pursuant to *Pavey v. Conley*, **544 F.3d 739, 740-41(7th Cir. 2008).**

Plaintiff testified as to his attempts at exhaustion at the hearing. Plaintiff testified that he wrote a grievance on March 18, 2013 which he submitted through the bars of his cell in segregation. Plaintiff also made a handwritten copy of the March 18, 2013 grievance for his own records as the law library does not allow photocopies of grievances until they are responded to by the counselor or grievance officer. Although Plaintiff mentions the March 18, 2013 grievance in his complaint (Doc. 1, p. 4), Plaintiff admitted that he did not attach the grievance to his complaint or his responsive brief. Plaintiff testified that he did not realize the grievance should be filed because he did not receive a response to the grievance. He noted that he attached some grievances to his responsive brief, but others he did not attach. Plaintiff testified that he still had the grievances and could submit them to the Court in a supplement. Plaintiff asked for leave to submit the March 18, 2013 grievance.

Plaintiff also testified that he submitted the March 18, 2013 grievance to the ARB. Plaintiff testified that he sent the March 18, 2013 grievance through the mail to the ARB on March 20, 2013. He never received a response from Springfield. Plaintiff indicated that he wrote two grievances on March 18, one relating to the assault and one relating to medical care. He testified that he sent both to the ARB in Springfield.

Plaintiff also testified as to his March 29, 2013 grievance which was included in his complaint. Plaintiff acknowledged that he did receive a response from his counselor and grievance officer as to this grievance. Plaintiff stated that he then sent the grievance to the ARB on August 27, 2013. Plaintiff's grievance indicates that the grievance was appealed on August 27, 2013 (Doc. 1, p. 11). When asked why the date appears to be written over a whited-out section, Plaintiff testified that he did not know what happened to the grievance and could only speculate. Plaintiff believes that it was smudged while in his records, either by water or food, and that he rewrote the date that he sent it to the ARB over the smudge. Plaintiff testified that he would not have used white out or covered the smudge with anything.

While Plaintiff indicated that he did not submit his March 18, 2013 grievance with his complaint or his responsive brief because he did not believe that the grievance was needed, he later indicated that he tried to submit additional grievances, including the March 18, 2013 grievance, with his responsive brief but that the law library simply did not file the grievance. Plaintiff testified that the law library did not electronically file all of the grievances that he had attached to his responsive brief. Plaintiff admitted that he did not seek leave of the Court to supplement his responsive brief, prior to the hearing, but argued it was because he believed the Court would deny the motion as the Court had previously denied other motions he had filed related to other issues.

## CONCLUSIONS OF LAW

### A. Legal Standards

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. ***Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008).** Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.**

   1. *Exhaustion Requirements Under Illinois Law*

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800** *et seq.* The grievance procedures first

require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer…[who] shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written

report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. **20 Ill. Admin. Code §504.840(b).** Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

### B. Motion for Leave to Supplement

At the hearing, Plaintiff indicated that he did not submit all of his grievances to the Court. Specifically, Plaintiff testified that his March 18, 2013 grievance, allegedly dealing with the assault and his lack of medical care, was not attached to either his complaint or his responsive brief. As discussed below, Plaintiff gave varying

explanations for why the grievance was not attached. Plaintiff asked for leave to submit the March 18, 2013 grievance after the hearing, a request that the undersigned took under advisement. The Court now **DENIES** that oral motion. As will be shown below, the Court does not find Plaintiff's testimony regarding a March 18, 2013 grievance to be credible. Due to Plaintiff's lack of credibility, the Court finds that any subsequently submitted grievances would be suspect as to whether the grievances are real or have been backdated to support Plaintiff's position.

### C. Analysis

Defendants argue that they are entitled to summary judgment because there is no evidence in the record that Plaintiff fully exhausted his administrative remedies. Plaintiff argues that he tried to exhaust his administrative remedies but that he did not receive responses to the grievances. If true, his attempts at exhaustion would be deemed thwarted and he would be allowed to proceed with his lawsuit. *See Walker v. Sheahan*, **526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response);** *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources);** *Brown v. Darnold*, **2010 WL 3702373, at \*3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting** *Lewis v. Washington*, **300 F.3d 829, 833 (7th Cir. 2002)).**

However, the Court finds Plaintiff's testimony that he tried to exhaust his administrative remedies to lack credibility.

   *1. March 18, 2013 Grievance*

As to the March 18, 2013 grievances (as Plaintiff now testifies that he tried to submit two grievances on that date), Plaintiff did not submit that grievance either in his complaint or in response to the summary judgment motion.  He testified that he did not know that the grievance was needed but he attached other grievances to both filings.  In fact, he attaches the same grievances to both his complaint and his responsive brief, even though he testified that he attached some grievances to his complaint and some to his summary judgment motion.  The Court finds it suspicious that Plaintiff did not know that the March 18, 2013 grievance would be important as it was discussed in the summary judgment motion and the Defendants even indicated in that motion that the grievance was not attached to the complaint (Doc. 59, p. 6).  Thus, Plaintiff had ample notice that the March 18, 2013 grievance was at issue, yet he still did not attach the grievance.  The Court finds Plaintiff's failure to attach the March 18, 2013 suspect.

The Court also finds Plaintiff's testimony to lack credibility because Plaintiff changed his testimony as to why the March 18, 2013 grievance was not in the record. When questioned why Plaintiff failed to attach the grievance, Plaintiff first stated that he did not know he should file it and then later stated that he did try to submit the grievances with his responsive brief but that the law library did not submit all of the grievances with his filing.  This differs significantly from Plaintiff's earlier testimony

that he did not believe the grievance was needed.  Further, Plaintiff mentions the exhibits that he claims are attached to the brief in the body of his brief.   He indicates that he has attached exhibits AA and BB (Doc. 67, p. 2).   Plaintiff explains in the brief that exhibit AA are documents that Defendants previously provided to the Court and BB is other evidence which shows that he attempted to exhaust his grievances.   But the March 18, 2013 grievance is not a part of exhibit AA or BB and there is no indication in the filing that pages are missing.   Thus, the Court finds Plaintiff's explanation of missing grievances to lack credibility.

The Court also finds Plaintiff's explanation suspect because he did not seek leave to supplement his response with the missing grievances.  If Plaintiff's exhibits had inadvertently been left out of his responsive brief, Plaintiff could have requested leave of Court to supplement his brief.   Plaintiff chose not to do that.   Plaintiff claimed that the reason he did not do so was because the Court had denied other motions that Plaintiff had filed.  Those motions, including a motion to appoint counsel and a motion to correspond with other inmates (Doc. 49), were denied but that does not mean that all of Plaintiff's motions would be denied.   There is simply nothing in the record to support Plaintiff's belief that the Court would deny Plaintiff's request to supplement his brief. Nor was there any attempt by Plaintiff to simply supplement his brief without leave of Court.   There were numerous avenues for Plaintiff to inform the Court of the missing grievances and Plaintiff failed to do so.   His actions, or lack thereof rather, suggest to the Court that no such grievances existed to supplement his brief.

Nor does the Court find credible Plaintiff's testimony that he submitted his March 18, 2013 grievance to the ARB. Plaintiff testified that on March 20, 2013, he submitted his grievance to the ARB by placing it in the mail system. Plaintiff testified that he never received a response to the grievance. But the ARB does not have a record of receiving the March 18, 2013 grievance (Doc. 59-1, p. 4). The ARB did have records of grievances submitted to it in January 2013 and in May 2015, but no grievances were received in March or April of 2013. Further, the Court finds it suspect that Plaintiff would submit his grievance to the ARB shortly after he submitted the grievance to his counselor. It is clear to the Court that Plaintiff knew the grievance process and, from the exhibits in the record, Plaintiff had followed to process on prior occasions. That he chose to submit a grievance to the ARB before even having received a response from his counselor does not make sense and leads the undersigned to believe that Plaintiff did not attempt to submit the March 18, 2013 grievance to the ARB as he testified.

Thus, the Court finds that there is no evidence to suggest that Plaintiff submitted a March 18, 2013 grievance regarding the assault and his medical care beyond his unsupported testimony.[2] Furthermore, Plaintiff's testimony on the matter is contradictory, suspicious, and not credible. He did not submit the grievance to the Court, which he claims he has in his possession, even though it was clear that it was relevant and Plaintiff had various opportunities to do so. Nor is there any indication

---

[2] Although Plaintiff alleges that his March 18, 2013 grievances dealt with a lack of medical care, the Court notes that Plaintiff did not see nurse Lang until March 20, 2013 or Dr. Shearing until March 23, 2013. Thus, any March 18, 2013 would not have included the allegations against those Defendants.

that he submitted the grievance to his counselor or the ARB, as he has testified. The undersigned will not accept any supplemental exhibits from Plaintiff, as Plaintiff has requested, as any unstamped grievance presented by Plaintiff at this late date would likely be fabricated. Accordingly, the Court finds that Plaintiff did not submit a March 18, 2013 grievance.

    2. *March 29, 2013 Grievance*

The Court also does not believe that Plaintiff fully exhausted his March 29, 2013 grievance. The March 29, 2013 grievance deals solely with Plaintiff's medical care after the assault and only alleges that the doctor and nurse refused to provide him with care. The grievance was submitted to Plaintiff's counselor and returned to him on May 17, 2013 (Doc. 1, p. 24). The grievance was received by the grievance office on June 11, 2013 (Doc. 1, p. 24) and denied by the grievance officer on July 29, 2013 (Doc. 1, p. 11). The grievance was then denied by the chief administrative officer on August 7, 2013 (Doc. 1, p. 11). Plaintiff testified that he submitted the grievance to the ARB on August 27, 2013. He has submitted a grievance with his signature indicating his appeal to the ARB and dated August 27, 2013 (Doc. 1, p. 11). The ARB has no record of receiving the appeal.

The Court finds the grievance Plaintiff provided to be a fabrication. The grievance's appeal date to the ARB has clearly been altered. The grievance has a white blank space over the date and date line (Doc. 1, p. 11). It appears to the undersigned that Plaintiff marked over the date with either a white-out pen or some sort of paper and rewrote the August 27, 2013 date. Plaintiff testified that he did not alter the date.

Rather, Plaintiff testified that the date was smudged while being housed in his cell, possibly by water or food, and that he simply wrote the date again over the smudge. The Court does not find the explanation to be credible. The blanked out portion of the date line does not appear to be a smudge or some sort of residue. If it was, the line and word "date" would still be legible. Instead, they are completely whited out. It appears that something was placed over the line in order to block out whatever was previously written on the line. As the document has clearly been altered by Plaintiff and his testimony to the contrary is not credible, the Court does not accept Plaintiff's testimony that he submitted the grievance to the ARB on the date in question. The Court also notes that the ARB has no record of the grievance indicating that Plaintiff did not submit the grievance. Accordingly, the undersigned finds that Plaintiff has not exhausted his administrative remedies.

## CONCLUSION AND RECOMMENDATION

Accordingly, it is **RECOMMENDED** that the Court **FIND** that Plaintiff has not exhausted his administrative remedies as to any of the defendants on any of his claims as the two grievances which allegedly grieve the issues in his complaint were not exhausted. As such, the Court should **GRANT** Defendants' motions for summary judgment (Docs. 53,54 and 58,59) and **DISMISS without prejudice** Plaintiff's claims.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this

Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **February 16, 2016**.

**IT IS SO ORDERED**.
DATED: January 28, 2016.

/s/ *Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge